## Riazzi v. DiPlacido

*Louis R. Benacci,* for plaintiffs.

*J. S. Jiuliante, Sr.* and *Charles A. Mertens,* for defendants.

LAUB, J., May 6, 1955—This is a bill in equity in which plaintiffs allege an easement in a strip of land

which lies between the two homes of the parties hereto. Plaintiffs own approximately one and one-half feet of the land and defendants own approximately three and one-half feet of the land. As a result of neighborhood difficulties defendants have prevented plaintiffs from using the entire strip in removing screens and storm windows and in doing necessary repairs and painting on the west side of plaintiffs' home. In consequence the present complaint in equity was filed to restrain defendants from interfering with plaintiff's enjoyment of the disputed area.

## Findings of Fact

1. Plaintiffs are residents of the City of Erie and reside at 953 West 17th Street.

2. Defendants are residents of the City of Erie and reside at 955 West 17th Street.

3. Between the two residences of the parties hereto is a strip of land covered with concrete. The strip is approximately five feet in width. One and one-half feet of the said strip is owned by plaintiffs and the remainder is owned by defendants.

4. Plaintiffs have resided at 953 West 17th Street for approximately 20 years and have owned the property for the last 10 years. During their residence on the premises and until about three years ago they have constantly used the space between the houses for the purpose of taking down screens and putting up storm windows, to paint their house, to haul in coal and for other purposes relating to the maintenance of their property.

5. Since approximately three years ago, due to misunderstanding and bitterness between the parties hereto, defendants have prevented plaintiffs from using the concrete strip for the purposes mentioned in the next number above.

6. Up until three years ago there was a gate on the front portion of the concrete strip in question, which

was anchored on plaintiffs' house and which closed onto a latch anchored on defendants' house. The strip has never been used as a passageway and is not necessary to plaintiffs as a means of ingress and egress. It is necessary, however, for use in hauling in coal and for the purposes related in findings of fact number 4.

7. It is stipulated by and between the parties that William Hardwick was the owner of both pieces of property involved in this litigation in the year 1893. Hardwick acquired the property October 12, 1893, by deed recorded in Deed Book 109, page 280.

8. In the conveyance by which Hardwick took title to the property in question the deed recites that the land at the time of said conveyance had erected thereon five frame houses.

9. Hardwick's predecessor in title was William Wallace. William Wallace received title from Elizabeth and Robert Wallace by deed dated March 31, 1893, recorded in Deed Book 106, page 206. This conveyance made no mention of the five frame houses as indicated in the deed from William Wallace to Hardwick mentioned in the previous findings of fact.

### Discussion

Although there is no direct evidence in this case that a common owner constructed the houses upon the property, it is evident that at the time of the conveyance by William Wallace to Hardwick the houses had already been constructed. There is some evidence in this case introduced by the city assessor that 953 West 17th Street was built in 1882 and that 955 West 17th Street was built in 1894. Since it is admitted by the parties that Hardwick was the common predecessor in title to both plaintiffs and defendants, it is obviously erroneous that 955 West 17th Street was built in 1894 for the reason that the Wallace to Hardwick conveyance refers to the five dwelling houses already erected on the premises.

Ordinary and necessary repairs to a dwelling house cannot be conducted on a one and a half foot strip of land. It therefore, must have been apparent to both plaintiffs and defendants at the time they acquired title that the concrete strip of land existing between their houses was subjected to some sort of an easement. In consequence, we are of the opinion that an apparent easement was in existence at the time of the purchase of both pieces of property by plaintiffs and defendants, said apparent easement having been created by a previous owner who was the common predecessor in title to both of the parties hereto.

### Conclusions of Law

1. Plaintiffs have established an easement of maintenance whereby they have the right to enter upon the disputed land for the purpose of making repairs, painting, taking down storm windows, putting up screens and putting coal in the basement.

2. There is no easement of way over the disputed land.

3. Defendants must be restrained from interfering with plaintiffs' exercise of the easement set forth in conclusions of law number 1.

4. Plaintiffs and defendants must pay the costs in equal proportions.

### Decree

And now, to wit, May 6, 1955, it is ordered, adjudged and decreed:

1. Plaintiffs have an easement of maintenance over the land of defendants, existing between their respective houses, upon which land plaintiffs may enter for the purpose of making repairs, painting, putting up and taking down screens and storm windows and putting coal in the basement.

2. Plaintiffs have no easement of way over the land of defendants.

3. Defendants are perpetually enjoined and re-strained from interfering in any manner with the right of plaintiffs to the use of the easement set forth herein.

4. Plaintiffs and defendants shall pay the costs in equal proportions.

The prothonotary is directed to enter this decree nisi and give notice to the parties or their counsel of record, of the entry of the decree and, if no exceptions are filed within 20 days thereafter, the decree shall be entered as the final decree by the prothonotary as of course.